IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FELTON WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-CV-770-SMY |
| | ) |
| MICHAEL CLARK, MICHAEL HYDE, | ) |
| RAYMOND MCCANN, REBECCA | ) |
| CULP, KHOREY ANDERTON, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Now pending before the Court are Defendant Rebecca Culp's Motion for Summary Judgment (Doc. 94) and Defendant Michael Clark, Michael Hyde, Raymond McCann, and Khorey Anderton's Motion for Summary Judgment (Doc. 97). Plaintiff filed responses in opposition (Docs. 123 and 124). For the following reasons, Culp's Motion is **GRANTED,** and the remaining Defendants' Motion is **DENIED**.

## Background

All facts are taken in a light most favorable to Plaintiff Felton Williams as the nonmoving party. *National American Ins. Co. v. Artisan and Truckers Cas. Co.*, 796 F.3d 717, 722-23 (7th Cir. 2015): During the relevant period, Williams was an inmate at Big Muddy River Correctional Center ("Big Muddy"). On May 18, 2017, he was involved in a fight with another inmate, Shawn Russell, while they were heading to the chow hall – Russell punched Williams in the mouth, causing it to bleed, and Williams grabbed Russell around his arms (Doc. 95-1, pp. 4, 12). Correctional officers Michael Hyde, Raymond McCann, and others responded to the fight (*Id*. 13). They told the inmates to get on the ground and started hitting Williams as he was getting down

(*Id*. 13).  They continued to hit him, around the face and body with closed fists, while he was on the ground and they were cuffing him (*Id*. 14).  Then, they stood him up and "thrust" him into a wall, shoving his face into the brick wall (*Id.* 13, 15).  Williams felt "a crunching" when his face hit the wall (*Id*. 16).  McCann then punched him, chipping his tooth (*Id*. 15).  They then "walked [him] through the foyer and to the health care like that, twisted up like a pretzel" (*Id*. 17).

At the health care unit, Williams was seen by Nurse Rebecca Culp.  Culp observed Williams, asked him if he was in pain, and when Williams asked whether his nose was broken, indicated that she did not believe it was broken (*Id*. 5).  She cleaned up his bleeding nose and mouth, examined the lacerations on his head, and created a report of the encounter (*Id*. 5; Doc. 95-2, p. 1-2).  She did not give him any medication or medical supplies, nor did she order an x-ray or other diagnostic tool to determine if his nose was broken (Doc. 95-1, p. 9).  Defendant Khorey Anderton interviewed Williams regarding the fight while he was in the healthcare unit (Doc. 98-4, p. 1, ¶¶ 2-3).

When Williams was taken to segregation after being treated, he noticed that his nose and lips were swollen, that his right eye was swollen, and that he had a scratch on his forehead (Doc. 95-1, p. 9).  After the swelling went down, he could see that his nose was broken (*Id*. 8).  Following the incident, he had headaches that lasted a couple of years and permanent disfigurement (*Id.* 8).  Williams filled out a grievance form regarding the incident on May 18.[1]

On June 3, 2017, Anderton (who Williams believes is a grievance officer) escorted Williams to the internal affairs department with Williams' excessive force grievance in hand (*Id*. 20, 21).  He told Williams: "Mr. Williams, you're painting a bullseye on your own back. . . . [W]e

---

[1] The only grievance in the record concerns missing commissary items (Doc. 123, p. 77).  The grievance does not mention being assaulted by prison guards, does not mention any Defendant, and does not mention receiving inadequate medical care after the incident.  However, Plaintiff testified that he filled out another grievance regarding the excessive force (Doc. 95-1, p. 20).

Page **2** of **8**

are all on the same team here. . . . [I]t will be in your best interest to drop this" (*Id*. 20). Williams took his statements as a threat (*Id*. 20-21). During this encounter, Williams told Anderton that he believed his nose was broken but did not request medical care. Anderton did nothing and told Williams that he was not a doctor (*Id*. 22-23).

On June 16, 2017, Lieutenant Michael Clark also told Williams that he should drop his excessive force grievance (*Id*. 23). When Williams told him that his nose and tooth were broken, Clark told Williams that he was not a doctor and that he should put in a request to health care for his broken nose (*Id*. 23, 26).

Williams requested medical care for his nose from another nurse who is not a party to this lawsuit (*Id*. 8). He was seen in the health care unit on May 20, 2017 and June 30, 2017 for unrelated medical conditions (*Id.* 3, 8). On July 30, 2017, Williams was referred to a doctor for his broken nose (Doc. 95-2, p. 10). An x-ray taken on September 12, 2017 found a "small avulsion fracture from the tip of the nasal bone . . . . Paranasal sinuses are clear. Nasal septum is central" (Doc. 95-2, p. 16). Williams was released from Big Muddy in 2018 and did not seek any further medical care for his nose (Doc. 95-1, p. 8).

## Discussion

Williams filed the instant lawsuit pursuant to 42 U.S.C. § 1983. (Doc. 24). He is proceeding on three counts:

> Count One:    Eighth Amendment excessive force claim against Hyde and McCann.
>
> Count Two:    Eighth Amendment deliberate indifference claim against Anderton, Clark, and Culp.
>
> Count Three:  State law battery claim against Hyde and McCann.[2]
>
> (Doc. 83).

---

[2] Plaintiff states in his response (Doc. 123, p. 24) that he does not wish to proceed on this state law battery claim. Accordingly, Count III will be **DISMISSED with prejudice.**

Summary judgment is proper only if the moving party can demonstrate that there is no genuine issue as to any material fact or where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986). Any doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *Lawrence v. Kenosha County,* 391 F.3d 837, 841 (7th Cir. 2004).

## Count 1 – Excessive Force

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). To prevail on an excessive force claim, a plaintiff must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Id.* at 40 (*citing Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* In other words, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38. *See also Dewalt v. Carter*, 224. F.3d 607, 620 (7th Cir. 2000); *Lunsford v. Bennett*; 17 F.3d 1574, 1582 (7th Cir. 1994).

The alleged actions of McCann and Hyde – gratuitous hitting of Williams while he was restrained and no longer fighting, slamming him into a wall and punching him, and escorting him

in an awkward and painful manner is not de minimis force. While Defendants argue that Williams didn't mention the excessive force to prison investigators, that Hyde was not the officer involved because he was in another part of the prison, and that McCann was not involved in restraining Williams or escorting him to the health care unit, these arguments raise issues of fact as to Williams' version of events; they cannot support findings as a matter of law. Likewise, Defendants' argument that even if McCann and Hyde were involved, the use of force was necessary and reasonable is an issue of fact to be decided by a jury. Thus, summary judgment is inappropriate as to Count I.

### Count II – Deliberate Indifference

Williams claims that Culp, Anderton, and Clark acted with deliberate indifference to his serious medical needs by failing to provide care or adequate care for his broken nose. To succeed on this claim, Williams must prove that his condition was "objectively, sufficiently serious" and that "prison officials acted with a sufficiently culpable state of mind," namely, deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). "Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough." *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015). Put another way, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A factfinder may also conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *Id.* (internal quotations omitted).

Here, it is undisputed that Williams' condition presented a serious medical need. However, Culp argues that she was not deliberately indifferent to his medical condition because she treated him immediately after the fight although she did not believe he had a broken nose. It is undisputed that Culp examined and cleaned Williams' injuries and that she told him that she did not believe

that he had a broken nose.³  On these facts, no reasonable jury could conclude that Culp was deliberately indifferent to Williams' needs, even if she did not request an x-ray of his nose. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("an inmate is not entitled to demand specific care and is not entitled to the best care possible, he is entitled to reasonable measures to meet a substantial risk of serious harm"). There is no evidence that her treatment was blatantly inappropriate, or a significant departure form accepted professional standards. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Norfleet v. Walker*, 439 F.3d 392, 396 (7th Cir. 2006). Therefore, Culp is entitled to summary judgment.

Correctional officers Anderton and Clark's liability under § 1983 is predicated on their personal involvement in the alleged constitutional violation. *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).  Williams alleges he told them that his nose was broken, that both officers told him that they are not doctors, and that Clark told him to put in a request for health care. Defendants contend that Anderton interviewed Williams in the healthcare unit immediately following the fight; the inference being that he knew Williams was receiving medical care for his broken nose.  But there is no evidence that Anderton or Clark knew what specific medical treatment Williams was or was not receiving.  While the jury may choose to draw the inference championed by the Defendants, they may choose not to do so.

Defendants further argue that it was reasonable for Clark to do nothing other than refer Williams to the healthcare unit.  The Court disagrees. While it is a close question, a jury could find

---

³ In his affidavit, dated July 17, 2020, Williams states that Culp told him "you look fine we don't treat broken noses" (Doc. 124, p. 16). In his deposition dated June 27, 2019, he testified: "I clearly ask her, I say, while she was talking to me, asking me whatever questions she was talking to me did I feel pain anywhere.  I say, is my nose broken? And she told me, oh, it doesn't appear – it doesn't look to be broken.  But I told her I thought my nose was broken." The implication of the affidavit is that Culp refused to treat his broken nose while the implication of his deposition testimony is that she did not believe he needed treatment for a broken nose.   A party may not submit, and the Court is not required to consider, an affidavit that contradicts prior sworn testimony. *James v. Hale*, 959 F.3d 307, 315-316 (7th Cir. 2020).  Accordingly, Williams' affidavit on this point will not be considered.

that Defendants Anderton and Clark essentially ignored Williams' obviously serious medical condition and thereby were deliberately indifferent to his medical needs.  *See Grieveson v. Anderson*, 538 F.3d 763, 767-78, 780 (7th Cir. 2008); *Hayes v. Snyder*, 546 F.3d 516, 522-3 (7th Cir. 2008).

**Qualified Immunity**

Finally, Defendants argue they are entitled to qualified immunity.  Governmental officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

Defendants Hyde and McCann argue that if they are held liable, they would be subjected to a "heightened standard for what constitutes a Constitutional violation" (Doc. 98, p. 13).  It is unclear what Defendants mean by this argument and they cite to no case authority to support this assertion.  In any event, the record contains facts from which a jury could conclude that Hyde and McCann violated Williams' constitutional rights by using excessive and unreasonable force.  And, at the time in question, the unconstitutionality of the use of improper force in this context was clearly established and should have been known to Defendants.  *See Thomas v. Stalter*, 20 F.3d 298 (7th Cir. 1994) (where an officer punched an inmate in the face while he was restrained causing pain and exacerbation of a dental condition).  Thus, Hyde and McCann are not entitled to qualified immunity.

Similarly, Anderton and Clark are not entitled to qualified immunity. Defendants rely on *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009), for the proposition that they are not liable for Williams' medical care if he was being treated by medical professionals. In that case, however, the court held that § 1983 does not create a system of vicarious liability that would rope in all persons with knowledge of a medical condition. By contrast, in this case, Williams alleges that he specifically told Defendants that he had a broken nose and tooth. Faced with knowledge of these serious medical conditions, Defendants allegedly did nothing. At the time of the occurrences alleged, it was clearly established that prison officials cannot "turn a blind eye" to the plight of prisoners. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) ("Non-medical defendants cannot simply ignore an inmate's plight.").

## Conclusion

For the foregoing reasons, Defendant Culp's Motion for Summary Judgment (Doc. 94) is **GRANTED**; Defendants Clark, Hyde, McCann, and Anderton's Motion for Summary Judgment (Doc. 97) is **DENIED**. Count II is **DISMISSED with prejudice** with respect to Defendant Rebecca Culp only and Count III is **DISMISSED with prejudice** in its entirety. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the conclusion of this case. This case will be set for a status conference by separate order.

**IT IS SO ORDERED.**

DATED: August 25, 2021

**STACI M. YANDLE**
**United States District Judge**